UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                      :

INTERCEPT PHARMACEUTICALS, INC.,    :

        Plaintiff and Counterclaim-Defendant  :

    -against-

CHRIS HOWARD,

        Defendant and Counterclaim-Plaintiff.  :
-------------------------------------------------------------- X

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

14 Civ. 1480 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Plaintiff, Intercept Pharmaceuticals, Inc. ("Intercept") sues for a declaratory judgment of its rights and obligations under a stock option agreement between it and defendant, Chris Howard, a former employee. Howard claims in his Answer and Counterclaims, that he properly and timely exercised his stock option, and that Intercept failed to honor his exercise, giving rise to damages. Intercept moves for judgment on the pleadings and to dismiss Howard's counterclaims under Fed. R. Civ. P. 12(c). For the reasons stated below, Intercept's motion is granted and judgment shall be entered in its favor.

I.     **Background**

      Intercept is a biopharmaceutical company located in New York and founded in 2002. Chris Howard worked for Intercept, first as a consultant and then as an at-will employee, from 2005 to 2007. Howard's Consulting Agreement, signed in 2005, provided for an option to purchase 108,000 shares of Common Stock of Intercept at $0.50 per share. The option provided that it was subject to the terms and conditions of the Stock Option Agreement that Intercept and Howard planned to agree to after execution of Howard's Consulting Agreement.

      The Stock Option Agreement provided that options had to be exercised in writing that

was timely received by Intercept, accompanied by payment in full. The Agreement provided that:

> Each election to exercise this option shall be in writing in the form of notice attached hereto as Exhibit A, signed by [Howard], and received by [Intercept] at its principal office, accompanied by this agreement, and payment in full in the manner provided in the [Intercept 2003 Stock Plan].

The Intercept 2003 Stock Plan provided that stock options

> may be exercised by delivery to [Intercept] of a written notice of exercise signed by the proper person . . . together with payment in full as specified in Section 5(f) for the number of shares for which the Option is exercised.

Section 5(f) of the 2003 Stock Plan provided for payment "in cash or by check, payable to the order of Intercept." Thus to exercise his option, Howard had to deliver both written notice of his intent to exercise the option, and cash or check for the full price of the shares of stock covered by the option.

Section 10(f) of the 2003 Stock Option Plan provided that Delaware law would govern:

> the provisions of the Plan and all Awards made hereunder shall be governed by and interpreted in accordance with the laws of the [State of Delaware], without regard to any applicable conflicts of law.

(brackets in original).

In 2006, Howard signed an Employment Agreement with Intercept to be an at-will employee, and confirmed the prior grant of his stock option. The Employment Agreement also provided that the stock option remained subject to the terms of the 2003 Stock Plan.

In 2007 Howard was terminated. He entered into a Termination Agreement with Intercept dated July 23, 2007, providing for certain severance benefits in exchange for a general release. The Termination Agreement extended Howard's deadline to exercise his stock option to December 31, 2007. The Termination Agreement provided in pertinent part that:

2

pursuant to the Company's 2003 Stock Incentive Plan, you will have up to ninety (90) days after the Termination Date to exercise any vested stock rights you may have (as provided for by the plans). All unvested stock rights will be cancelled on the Termination Date.

[I]f you timely sign and return this letter agreement, subject to approval by the Company's Board of Directors, you will have until 5:00 p.m. (New York City time) on December 31, 2007 to exercise the vested portion of your options to purchase shares of the Company's common stock.

This letter agreement contains and constitutes the entire understanding and agreement between the parties hereto with respect to your severance benefits and the settlement of claims against the Company and cancels all previous oral and written negotiations, agreements, and commitments, in connection therewith.

The Termination Agreement also provides that it is governed by New York Law: "This letter agreement shall be interpreted and construed by the laws of the State of New York without regard to conflict of laws provisions."

On October 9, 2007, Howard sent an email to Intercept expressing his interest in "executing [his] stock options" and inquiring about "the exact amount required for the purchase of these options." He also requested a copy of the Notice of Stock Option Exercise which provides that he is the holder of a stock option "granted to [him] under the [Intercept 2003 Stock Plan] for the purchase of 108,000 shares of Common Stock of [Intercept] at a purchase price of $0.50 per share." Intercept emailed Howard the Notice of Stock Option Exercise on or about October 12, 2007. On October 30, 2007, Howard signed the Notice of Stock Option Exercise and returned it to Intercept. Intercept alleges that no check was included with the Notice of Stock Option Exercise.

In December 2007, Intercept sent Howard at least three emails reminding him that in order to exercise his stock option he had to make payment to Intercept before December 31, 2007, the expiration date of the Stock Option. An email from Intercept employee Nora White dated December 21, 2007 stated that "the office will be closed next week so if you are

3

going to send a check for executing those options (which should be done by 12/31), please give me a heads up — I'll be checking the mail every couple days." A second email from Nora White dated December 27, 2007 states that "I honestly don't know if getting [the check] later would be any problem – I doubt if the check is dated before end of the year, but please let me know what you plan to do if you have a chance." A third email from Intercept CEO and founder, Mark Pruzanski was sent to Howard reminding him to "get payment in for your stock options for the end of the year."

Intercept claims that it did not receive payment from Howard in any form, at any time, before 5:00 p.m. on December 31, 2007. Intercept claims it did not hear again from Howard until his wife emailed Intercept six years later in January 2014 seeking copies of the stock certificates for the shares.[1]

Howard claims that he mailed his check to Intercept timely on December 26, 2007, by first class mail, in the amount of $54,000. He has nothing to confirm that assertion — no cancelled check, no email acknowledgement, nothing. He claims that an email from Intercept's legal counsel, Brian Yoon, on January 13, 2014, that stated "I have internal emails from January 2008 showing we hadn't received the check until after the expiration period," shows that Intercept did receive Howard's check. But that stretches logic too far.

## II. Standard of Review

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard as a motion to dismiss. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). The court accepts all well-pleaded allegations as true and the counterclaim must contain

---

[1] Intercept had become a public company in October 2012. In January 2014, Intercept announced the successful clinical testing of its drug for the treatment of serious liver disease.

4

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Patterson*, 549 F.3d 150, 160 (2d Cir. 2010).

### III.  Discussion

Intercept argues that Howard's counterclaims are time-barred under the relevant statute of limitations. The parties dispute whether New York or Delaware law governs. This matters because under New York law the statute of limitations for a breach of contract claim is six years, N.Y. C.P.L.R. § 213(2), while under Delaware law the statute of limitations is three years, 10 Del. C. § 8106. Both operative documents, The 2003 Stock Plan and the 2007 Termination Agreement, contain choice of law clauses. The 2003 Stock Plan provides that the state for the law of Delaware governs; the 2007 Termination Agreement provides that New York law governs; both provide, "without regard to conflict of laws provisions."

Under New York law, choice of law provisions in contracts that provides that another state's substantive law would govern would not automatically apply to statute of limitations. As *Gilman v. Marsh & McLennan Companies, Inc.*, 868 F. Supp. 2d 118, 136 (S.D.N.Y. 2012), made clear, statute of limitations are procedural. "Under New York law, a choice of law clause is construed as choosing only the applicable substantive law, and statutes of limitations are regarded as part of the forum's procedure." *Id.* In *Gilman,* a case similar to this one, the contract contained a forum selection clause providing for Delaware law that specifically stated that it should do so "without giving effect to principles of conflicts of law." *Id.* Even so, the New York court applied the six-year New York statute of limitations for breach of contract claims. *Id.*

Thus, under New York law, Howard had six years from the time his claim

5

accrued to file his complaint or counterclaim. Howard's claim accrued when under the enlarged time to exercise his option provided by his Termination Agreement, December 31, 2007, he claimed to exercise.[2] Thus, even assuming as Howard alleges, that he mailed the check to Intercept on December 27, 2007 and that it was received by Intercept before the December 31, 2007 deadline, his claim would have accrued, at the very latest possible date, on December 31, 2007, more than six years before he filed his counterclaim on March 31, 2014.[3]

Howard argues that even if his claim is time barred, the statute of limitations should be equitably tolled. "Under the equitable tolling doctrine, a statute of limitations does not run against a plaintiff who was justifiably ignorant of his cause of action." *Soroof Trading Development Co., Ltd. v. GE Fuel Cell System, LLC*, 842 F. Supp. 2d 502 (S.D.N.Y. 2012). Here, there is no basis for equitable tolling. "A plaintiff seeking to invoke [equitable tolling] is also required to demonstrate that his ignorance is not attributable to a lack of diligence on his part." *Netzer v. Continuity Graphic Associations*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997).

In this case, Howard clearly could have exercised a mere modicum of diligence and followed up with the multiple Intercept personnel who sent him emails advising him that Intercept had not received the check. He also could have easily checked his bank statement to confirm that Intercept had, in fact, cashed his check. Failure to take these simple measures which

---

[2] If the relevant parties concede that an option was effectively exercised, the statute of limitations begins to accrue when the person granted the option demands the stock. *Rossi v. Oristian*, 50 A.D.2d 44 (N.Y. Sup. Ct. 1975) (collecting cases). This does not help Howard, however, because Intercept disputes that he effectively exercised the option. Additionally in *Rossi,* the ability to exercise the option did not expire; Howard's option, by its terms, expired.

[3] Under New York law, a counterclaim is not time barred if it would not be barred if asserted at the time the complaint is filed. *See Sea Trade Co. Ltd. v. FleetBoston Financial Corp.*, 2006 WL 2786081, at *2 (S.D.N.Y. Sept. 26, 2006); NYCPLR § 203(d). Thus, Howard's claims could relate back to the date the complaint was filed, March 4, 2012. This is of no help to Howard, however, as even this date lies outside the more generous six year statute of limitations.

6

would behoove anyone with a healthy dose of common sense make Howard ineligible for equitable tolling of New York's six-year statute of limitations for breach of contract claims.

*Conclusion*

I therefore find that Howard, having filed his counterclaims more than six years after the deadline to exercise his stock option, December 31, 2007, is barred from bringing his counterclaims by the statute of limitations. I find further that Intercept is entitled to judgment on its claim that it has no rights or obligations owed to Howard regarding his stock option. Intercept's motion is granted in its entirety.

The Clerk shall mark the motion (Doc. No. 19) terminated and the case closed, and enter judgment with costs in favor of Intercept and against Howard.

SO ORDERED.

Dated: August 4, 2014
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge